EX REL. J. R. SPRIGGS v. R. W. CRAIG, Sheriff of Ransom County, North Dakota.

(161 N. W. 1007.)

**False pretense — misrepresentation — existing fact — past event — not a mere broken promise — relating to future.**

A false pretense is a misrepresentation as to an existing fact or past event, and not a mere broken promise to do something in the future.

Opinion filed March 19, 1917.

Application for writ of habeas corpus.
Writ granted and petitioner released.

Statement of facts by BRUCE, Ch. J.

This is an application for a writ of habeas corpus. The petitioner was arrested under a warrant issued by a committing magistrate on a complaint filed by the state's attorney of Ransom county. A preliminary hearing was had on January 26, 1917. Testimony was taken, and the defendant bound over to the district court for trial. A writ of habeas corpus was sought to be obtained from the Honorable Frank

P. Allen, of the district court of the fourth judicial district, but was refused. A writ is now prayed from this court.

*Curtis & Curtis,* for plaintiff.

*J. V. Backlund, Wm. Langer,* Attorney General, and *Dan V. Brennan,* Assistant Attorney General, for defendant.

BRUCE, Ch. J. (after stating the facts as above). It is difficult to see how the defendant can be held under the complaint and proof in this case.

The complaint is as follows: "J. V. Backlund, being first duly sworn, deposes and says that on or about the 21st day of October, A. D. 1916, in the county of Ransom, state of North Dakota, the above-named defendant did commit the crime of obtaining property under false pretenses, committed as follows, to wit:

"That at the said time and place the defendant did unlawfully, wilfully, feloniously, and designedly, with intent to cheat and defraud one A. E. Jones of his property, falsely pretend and represent to the said A. E. Jones that he, the defendant, would procure and deliver to the said A. E. Jones a term insurance policy, made by the Mutual Insurance Company of New York, in the sum of $10,000, and the said A. E. Jones, then and there believing the said representations and pretenses so made to him by the defendant, and being deceived thereby, did, make, execute, and deliver to the defendant his certain promissory note in the sum of $228, payable sixty days from the date thereof. That said defendant has negotiated said note, and has wilfully, unlawfully, and feloniously failed to procure and deliver the said insurance policy to the said A. E. Jones.

"This contrary to the statute in such case made and provided and against the peace and dignity of the state of North Dakota.

"Wherefore, complainant prays that the defendant may be arrested and dealt with according to law."

It is clear that the complaint charges no offense. It merely alleges a promise to "procure and deliver a term insurance policy." There is no allegation whatever of any false token or of any false pretense, or of any fraud or deception more than the failure to live up to the terms of the contract.

36 N. D.—11.

A false pretense is a misrepresentation as to an existing fact or past event, and not a mere broken promise to do something in the future or a misrepresentation as to something to take place in the future. State v. Hollingsworth, 132 Iowa, 471, 109 N. W. 1004; 2 Words & Phrases, 2d series, 454.

All that the evidence shows is that on the 21st day of October, 1916, the petitioner, J. R. Spriggs, was at the office of one A. E. Jones and talked about insurance; that after some conversation, the said Jones informed said Spriggs that he desired a $10,000 yearly rate term insurance policy, the premium of which was $228; that said Spriggs prepared an application and handed the same to Jones, who attached his signature thereto; that thereafter Jones made, executed, and delivered to the said Spriggs his promissory note for $228; that at the same time Spriggs gave to Jones a receipt for $228, with the following notation thereon: "Y. R. T. No. 168;" that as a matter of fact the application prepared by Spriggs and signed by Jones was not an application for a yearly rate term insurance policy, but was for an ordinary life insurance policy, the premium of which was $566; that the petitioner, Spriggs, cashed the note and has failed to account therefor, either to the said Jones or to the insurance company, and that the insurance company refuses to issue an ordinary life policy, and, in fact, the yearly term policy. On the hearing the state failed to produce the application in evidence. Section 10,842 of the Compiled Laws of 1913 provides that "upon a trial for having, with an intent to cheat or defraud another designedly, by any false pretense, obtained the signature of any person to a written instrument, or having obtained from any person any money, personal property or valuable thing, the defendant cannot be convicted if the false pretense was expressed in language unaccompanied by a false token or writing, unless the pretense, or some note or memorandum thereof, is in writing, either subscribed by, or in the handwriting of the defendant, or unless the pretense is proved by the testimony of two witnesses, or that of one witness and corroborating circumstances."

The petitioner, Spriggs, testifies: I had his application for the $10,-000 life insurance policy. A regular mutual life application, $10,000 yearly renewal term.

Q. You may state whether or not at that time you had any application for an ordinary life policy.

A. When we make application to the company, where we figure we can place additional insurance we make applications accordingly. We make it all in the same application, and make all the applications at once. Mr. Jones gave me that application for $10,000 policy, and had he passed same would have been delivered to him.

Q. Well, what about the ordinary life, part?

A. Well, I ordered that additional, for this reason that it is easier to get through a high grade policy than a lower grade.

Q. How did you order that?

A. Right on the application.

Q. On the application itself?

A. It all covers one application.

Q. It was application for two policies?

A. We order it all in one application, that is we make requisition for it.

Q. And that is what Mr. A. E. Jones signed?

A. Yes, sir.

All that A. E. Jones testifies to is that we talked about insurance policy, he wanted to insure me for a term policy for $10,000. It was to be a five-year term policy, with the privilege of renewal at the end of five years, for five years more and the rate was to be raised at the end of five years and at end of ten years. The premium on that policy was $228 for one year. He said he thought he could get the policy. He said that the company was writing such a policy, and that I would be sure to get such a policy. That note for $228 was given in payment of the insurance premium.

Q. Was there any other conversation had on the 21st day of October relative to this insurance that you can remember of?

A. Nothing except a general talk about the policy, and that it was better to settle for the policy when the application was taken; that it would be gotten through quicker if settlement was made at that time.

We find no allegation or proof of obtaining money or of obtaining the signature of a person to a written instrument "by any false pretense or false token," but merely of a failure to perform a contract.

The writ of habeas corpus, therefore, will be allowed and the prisoner is directed to be released from custody.

ROBINSON, J. (dissenting). I dissent from the decision in this case. It seems to open the way for crooks to go around the country offering to sell insurance, getting the premiums and putting the money into their own pockets, and leaving the trusting farmers to whistle for their money. There was no contractual relation between the complaining witness and the defendant. In all cases the parties contemplate that the delivery of the insurance policy and the payment of the premium go together. When the accused got the note and used it for his own benefit, without delivering the insurance policy, it was virtually the same as stealing the money. He was guilty. Furthermore, on trial in the district court the evidence might have been much stronger than on the examination.

In such case the writ of habeas corpus is not a matter of right, and this court should not hand down hairsplitting decisions to liberate parties who have in this way fraudulently obtained the money or property of another. Indeed, the purpose of the writ of habeas corpus is to liberate parties who are clearly innocent, or who are imprisoned without any legal authority.